**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03181-DDD-SKC

SEAN COUTURE,

      Plaintiff,

v.

UNITED AIRLINES, INC.; SIMPLICITY GROUND SERVICES, LLC d/b/a MENZIES
AVIATION; COLORADO ASPHALT SERVICES, LLC d/b/a COLORADO ASPHALT
SERVICES, INC.; and COLORADO ASPHALT SERVICES, LLC d/b/a CASI,

      Defendant.

---

**DEFENDANT SIMPLICITY GROUND SERVICES, LLC'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OF DEFENDANT COLORADO ASPHALT SERVICES,
LLC D/B/A COLORADO ASPHALT SERVICES, INC., AND D/B/A CASI**

---

Defendant Simplicity Ground Services, LLC, by and through its undersigned counsel of record, hereby submits its opposition to the summary judgment motion of Colorado Asphalt Services, LLC d/b/a Colorado Asphalt Services, Inc. and d/b/a CASI ("CASI"):

**INTRODUCTION**

CASI was contractually responsible for removing and preventing the accumulation of snow and ice from the spot where plaintiff slipped and fell on ice. CASI conducted its operations before plaintiff fell, and was called to apply additional de-icer fifteen minutes after plaintiff's fall. Plaintiff slipped on ice that CASI allowed to be present. These facts establish that CASI's summary judgment motion should be denied.

///

1

**RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. Admit.

6. Admit.

7. Admit.

8. Admit.

9. Admit.

10. Deny. CASI would "work together [with United] to verify that [CASI] was good to [be discharged]" from snow and ice operations. (Exh. A, CASI Depo. Transcr. at p. 63:8-65:18).

11. Admit.

12. Admit.

13. Admit.

14. Admit.

15. Admit.

16. Admit.

17. Admit.

18. Admit.

19. Admit.

20. Admit.

21. Admit.

22. Admit.

23. Admit.

2

24.    Admit.

25.    Admit.

26.    Admit.

27.    Deny.  CASI coordinated with United to determine when CASI had completed their snow and ice removal and prevention operations.  (Exh. A, CASI Depo. Transcr. at 63:8-65:18).  The video of the incident shows snow and ice on the ground near gate B50.  (Exhs. B-E, Stills from Incident Video).   Plaintiff slipped on ice that was either not cleared or prevented by CASI, or that formed when snow or ice that CASI did not clear, melted and re-froze.  (*Id*.; Exh. F, Badini Report, pp. 9-10.)

28.    Admit.

29.    Admit.

30.    Admit.

31.    Admit.

32.    Admit.

33.    Deny that the ground was clear and dry at gate B50 around 4:30 p.m.  Plaintiff did not testify that the conditions he observed were at gate B50.  (Exh. G, Couture Depo. Transcr. at 178:18-181:11).  The video of the incident show snow and ice at gate B50.  (Exhs. B-E, Stills from Incident Video).

34.    Deny that "snow piled by the jet bridge" was observed at gate B50.  Plaintiff did not testify that the conditions he observed were at gate B50.  (Exh. G, Couture Depo. Transcr. at 178:18-181:11).  The video of the subject incident show that snow was not "piled" at gate B50. (Exhs. B-E, Stills from Incident Video).

35.    Admit.

36.    Admit.

37.    Admit.

38. Admit.

39. Deny. CASI's assertion that "from approximately 12:00 p.m. to 4:00 p.m., the pavement temperatures at Denver International Airport ("DIA") were warm and favorable for melting residual snow," is not supported by the evidence. This assertion is based on the report of CASI's meteorological expert. CASI's expert does not have information reflecting the actual ground temperatures at DIA in the afternoon of January 22, 2019. (Exh. F, Badini Report, pp. 8-10). CASI's expert takes information of the reported ground temperatures at a weather station located 9.6 miles away from DIA, and assumes that the difference in air and surface temperature at that weather station is the exact same difference in surface and air temperatures at DIA. (*Id*.; Exh. H, DIA Area Map). This assumption is unreliable, in part because between 2:10 p.m. and 4:00 p.m., the air temperature at the weather station were warmer than the air temperatures at DIA. (Exh. F, Badini Report, pp. 8-9).

40. Deny. CASI's Snow Removal Manager testified that "ice melt is applied when temperatures are below freezing and snow has been cleared from an area." (Exh. I, Cozza Depo. Transcr. at 13:17-14:1).

41. Admit.

42. Admit.

43. Deny. United requested that CASI return to DIA to apply additional de-icer to the B Concourse, including gate B50 where plaintiff fell, at 6:55 p.m. (Exh. J, Jan. 22, 2019 Email; Exh. I, Cozza Depo. Transcr. at 26:14-21; CASI Depo. Transcr. at 32:3-13, 80:19-81:18).

44. Admit.

45. Admit.

46. Admit.

///

**STATEMENT OF ADDITIONAL DISPUTED FACTS**

1.      CASI's contract with defendant United Airlines, Inc. ("United') required CASI to "remove and prevent the accumulation of snow and ice" from "areas belonging to United" at DIA, including gate B50 where plaintiff fell.  (CASI-United Contract, Dkt. No. 77, filed with level 1 restriction, at COASPHALT 219-20, 229-30; Exh. A, CASI Depo. Transcr. at 10:10-15, 47:12-20, 49:14-50:13, 90:23-92:25; Exhs. B-E, Stills from Incident Video).

2.      These obligations included clearing and removing snow, and applying crystal and liquid de-icer after clearing snow, when the temperature is below freezing. (Exh. A, CASI Depo. Transcr. at 49:14-50:13, 90:23-92:25; Exh. I, Cozza Depo. Transcr. at 11:1-14).

3.      CASI performed its snow and ice removal and prevention operations at DIA from 10:00 pm on January 21, 2019, until 2:00 p.m. on January 22, 2019.  (Exh. A, CASI Depo. Transcr. at 32:10-34:1, 80:23-81:7; Exh. I, Cozza Depo. Transcr. at 32:25-33:3, 34:21-24, 44:25-45:3, 46:23-47:5).

4.      The temperature was below freezing at DIA from 10:00 pm on January 21, 2019, until 2:00 p.m. on January 22, 2019.  (Exh. F, Badini Report, pp. 5, 8-9).

5.      CASI's Snow Removal Manager testified that CASI attempted to perform its snow and ice removal and prevention operations at the spot where plaintiff fell, prior to his fall.  (Exh. A, CASI Depo. Transcr. at 10:10-15, 47:12-20, 49:14-50:13, 90:23-92:25; Exhs. B-E, Stills from Incident Video).

6.      CASI should have applied liquid and crystal de-icer to the area where plaintiff fell. (Exh. A, CASI Depo. Transcr. at 10:10-15, 47:12-20, 49:14-50:13, 90:23-92:25; Exhs. B-E, Stills from Incident Video; Exh. F, Badini Report at pp. 8-9; Exh. I, Cozza Depo. Transcr. at 11:1-14).

7.      At 6:40 p.m., plaintiff fell on ice at a spot where CASI attempted to, or should have, cleared snow and ice, and applied crystal and liquid de-icer, at gate B50.  (Exh. A, CASI Depo. Transcr. at 10:10-15, 47:12-20, 49:14-50:13, 90:23-92:25; Exhs. B-E, Stills from Incident Video;

Exh. F, Badini Report at pp. 8-9; Exh. I, Cozza Depo. Transcr. at 11:1-14; Exh. K, Incident Report).

8.    At 6:55 p.m., United requested that CASI return to DIA to apply de-icer to the B Concourse at DIA, including where plaintiff fell.  (Exh. J, Jan. 22, 2019 Email).

9.    There was no snow, precipitation, or ice that fell at DIA between 2:00 p.m., and the time of plaintiff's fall.  (Exh. F, Badini Report, pp. 5-7).

### STANDARD ON SUMMARY JUDGMENT

Summary judgment is warranted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).  "When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party."  *DC Auto., Inc. v. Kia Motors Am., Inc.*, 411 F. Supp. 3d 1137, 1141–42 (D. Colo. 2019).

### ARGUMENT

I.    **SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S PREMISES LIABILITY CAUSE OF ACTION BECAUSE CASI WAS A "LANDOWNER" THAT BREACHED THE DUTIES OWED TO PLAINTIFF.**

Plaintiff's first cause of action is for premises liability under Colorado's Premises Liability Act, C.R.S. 13-21-115 ("PLA").  First Amended Complaint ("FAC"), Dkt. No. 15 at ¶¶ 11-16. Plaintiff alleges that "Plaintiff was an invitee for all purposes pursuant to C.R.S. § 13-21-115." *Id*.

6

To establish liability against CASI on this basis, plaintiff must prove CASI was a "landowner," as defined by the PLA, and CASI's "failure to exercise reasonable care to protect against dangers of which CASI actually knew or should have known" caused plaintiff's injuries. C.R.S. § 13-21-115(2),(3)(c)(I).

CASI's summary judgment motion should be denied regarding plaintiff's premises liability cause of action because CASI was contractually obligated to remove and prevent accumulation of snow and ice from the area where plaintiff fell, and CASI attempted to remove and prevent the accumulation of snow and ice from the spot where plaintiff fell before his fall. A question of fact exists regarding whether CASI created or failed to remedy the ice that caused plaintiff's fall. CASI, therefore, qualifies as a "landowner" under the PLA. A question of fact also exists regarding whether CASI breached its contractual duties by failing to remove and prevent the accumulation of snow and ice where plaintiff fell.

### A. CASI Qualifies As A "Landowner" Under the PLA Because CASI Was Responsible for Removing and Preventing the Accumulation of Snow and Ice from the Spot Where Plaintiff Fell.

CASI qualifies as a "landowner" under the PLA if CASI was "(1) an authorized agent or a person in possession of real property, or (2) a person legally responsible for the condition of real property, or for the activities conducted on real property." *Collard v. Vista Paving Co.*, 292 P.3d, 1232, 1238 (2012). CASI is a "landowner" under both definitions.

### 1. CASI was "in possession of" the spot where plaintiff fell.

In *Pierson v. Black Canyon Aggregates, Inc.*, the Colorado Supreme Court considered whether an entity that conducted operations at a gravel pit was a "landowner" under the PLA. 48 P.3d 1215, 1216, 1218-21 (2002). The gravel pit was located on property leased to Montrose County "for mining, excavating, and stockpiling gravel." *Id*. at 1216. The County contracted with the defendant to crush gravel at the pit where plaintiff was injured. *Id*. Plaintiff was injured when he drove off a road which "runs through the gravel pit[,]" and which "ended in a seventeen-foot

7

drop-off caused by years of excavation and mining activities." *Id*. The defendant "had mined the pit [where plaintiff was injured,] on several occasions over the years. Most recently, [defendant] had been on site crushing gravel for less than a month." *Id*. at 1217. The court held that there was a question of fact regarding whether the defendant created the seventeen-foot drop-off at the end of the road which injured plaintiff. *Id*. at 1221 n.7. Based on these facts, the court held that the defendant was "sufficiently in possession to fit the definition of 'landowners' under section 13-21-115(1)[.]" *Id*. at 1221.

Applying this rationale here, CASI was "in possession of" the spot where plaintiff fell. Like the defendant in *Pierson*, CASI had a contract to perform its operations at the location where plaintiff suffered injury. *Pierson*, 48 P.3d at 1216-17. Like *Pierson*, CASI conducted its operations at the location where plaintiff was injured. *Id*. at 1217. CASI performed its snow and ice operations over the spot where plaintiff fell hours before plaintiff fell on ice, and fifteen minutes after plaintiff's fall, CASI was called to return to DIA to apply additional de-icer to the B Concourse, including the gate where plaintiff fell.

As in *Pierson*, there is a question of fact as to whether CASI created or failed to prevent the ice that caused plaintiff's fall. *Pierson*, 48 P.3d at 1221 n.7. CASI was contractually obligated to "remove and prevent the accumulation of snow and ice" from the gate where plaintiff fell. These obligations included clearing and removing snow, and applying liquid and crystal de-icer after clearing snow when the temperature is below freezing. CASI performed these operations at DIA from 10:00 pm on January 21, 2019, until 2:00 p.m. on January 22, 2019. The temperature was below freezing at DIA that entire time. CASI attempted to perform these operations at the spot where plaintiff fell, prior to his fall. At 6:40 p.m., plaintiff fell on ice at a spot where CASI should have cleared snow and ice, and applied de-icer. There was no snow, precipitation, or ice that fell at DIA between 2:00 p.m., and the time of plaintiff's fall. There is no evidence that any other person or entity created the ice between 2:00 p.m., and the time plaintiff fell. The only logical

8

interpretation of these facts is that Plaintiff slipped on ice that was either not cleared or prevented

by CASI, or that formed when snow or ice that CASI did not clear or treat with de-icer, melted

and re-froze.  Consequently, CASI was "in possession" of the area where plaintiff fell to qualify

as a "landowner."  *Id*. at 1216, 1220-21 n.7.

### 2. CASI also qualifies as a "landowner" because it was "legally responsible" for the ice plaintiff fell upon.

The second definition of a "landowner" is "a person legally responsible for the condition

of real property, or for the activities conducted or circumstances existing on real property."  C.R.S.

§ 13-21-115(1).  A defendant that may have created a condition that causes a plaintiff's injuries

qualifies as a "landowner" under the "legally responsible" definition.

In *Henderson v. Master Klean Janitorial, Inc.*, the court considered whether a custodial

company contracted to provide cleaning services qualified as a "landowner" under the "legally

responsible" definition.  70 P.3d 612 (2003).  The plaintiff slipped on water that was on a flight of

stairs at an office building.  *Id*. at 613.  The defendant "had a contractual obligation to mop up any

spills of which it was aware[,]" and the custodian on duty was called to clean up the spill that

plaintiff slipped on.  *Id*. at 615.  The custodial company moved for summary judgment, arguing,

in part, that it was not a "landowner."  *Id*. at 613.  The court rejected this argument, holding that

the defendant was "legally responsible" for the spill that injured plaintiff because the defendant

was contractually obligated to clean the spill that caused plaintiff's fall.  *Id*. at 615.  Consequently,

the court held that the defendant was a "landowner" under the "legally responsible" definition.  *Id*.

*Pierson v. Black Canyon Aggregates, Inc.*, explained that the "legally responsible"

definition of "landowner" focuses on "whether the defendant is someone who is legally entitled to

be on the real property and whether that defendant is responsible for creating a condition on real

property or conducting an activity on real property that injures an entrant."  48 P.3d at 1221.

Because the operator of a gravel pit may have created a seventeen foot drop off at the end of a road

which plaintiff drove off of, the operator was a "landowner" under the "legally responsible" definition. *Id*.

The rationale for holding that the defendants in *Henderson* and *Pierson* were "landowners" under the "legally responsible" definition applies here also. CASI was contractually obligated to "remove and prevent the accumulation of snow and ice" from the spot where plaintiff fell, and CASI attempted to perform these operations at the spot where plaintiff fell prior to his fall. Approximately fifteen minutes after plaintiff fell, United contacted CASI to return to DIA to apply additional de-icer to Concourse B, including the spot of plaintiff's fall. Thus, like the custodial company in *Henderson*, CASI was contractually obligated to remedy the condition that injured the plaintiffs, and CASI was contacted to address the condition after the incident. *Henderson*, 70 P.3d at 615. Like the gravel pit operator in *Pierson*, there is a question of fact as to whether CASI created the condition that injured the plaintiff. *Pierson*, 48 P.3d at 1221 n.7.

### B. CASI's Argument That It Was Not A "Landowner" of the Spot Where Plaintiff Fell Ignores Controlling Precedent and Relevant Facts.

CASI argues that it was not a "landowner" "in possession of" the spot where plaintiff fell because: (1) "CASI was not occupying the land" at the time of plaintiff's fall, (2) CASI had no right to exclude others from … the Concourse B Ramp when the Incident occurred[,]" (3) "[a]t 2:00 p.m. [when CASI was discharged by United,] CASI transferred complete control of the property back to United," and (4) CASI was excluded from re-entering DIA until United requested that CASI return to DIA at 8:00 p.m., after plaintiff fell. E.C.F. 76 at 11-12. CASI also asserts that it was not a "legally responsible" "landowner," because CASI was not present at DIA when plaintiff fell. *Id*. at 12-14.

These arguments misinterpret the cases CASI cites, and ignore that CASI was responsible for removing and preventing the accumulation of ice from the spot where plaintiff fell, but failed to do so.

**1.    The cases cited by CASI demonstrate that CASI was "in possession of" the spot where plaintiff fell.**

CASI cites *Nordin v. Madden*, 148 P.3d 218 (Colo. App. 2006), *Jordan v. Panorama Orthopedics & Spine Center, PC*, 346 P.3d 1035 (Colo. 2015), and *Pierson* for the argument that it was not "in possession of" the area where plaintiff fell.  E.C.F. 76 at p. 11-12.  These cases do not support CASI's argument.

*Pierson* demonstrates that CASI was "in possession of" the gate where plaintiff fell because CASI had a contract to perform operations at the location where plaintiff fell, CASI performed its snow and ice removal and prevention operations at the spot where plaintiff fell hours before plaintiff fell, and CASI apparently failed to prevent the ice that caused plaintiff's fall.  *Pierson*, 48 P.3d at 1216-17, 1220-21 n.7.  *Pierson* does not support CASI's assertion that an entity can only qualify as a "landowner" under the "in possession of" definition if the entity is conducting its operations at the same time the injury occurs.  *Pierson* does not state that being "in possession of" a location requires the defendant to be present at the location when the injury occurs.  *Id*. at 1216-17, 1220-21.  *Pierson* also does not state that the defendant was in the process of conducting its gravel crushing operations, or was in the process of creating the seventeen foot drop-off at the end of the road which plaintiff drove off of, at the time the plaintiff drove off the road.  *See generally*, *Pierson*.  The only mention of when the defendant in *Pierson* was conducting its operations is that the defendant had conducted its operations before plaintiff's injuries: defendant "had mined the pit [where plaintiff was injured] on several occasions over the years[,] and "had been on the site crushing gravel for less than a month."  *Id*. at 1217.  Thus, *Pierson* does not support CASI's argument that it cannot be a "landowner" because it was not present at DIA when plaintiff fell.

*Pierson* also explicitly rejected CASI's argument that it cannot be a "landowner" of the spot where plaintiff fell because it could not exclude anyone from that location.  The defendant "argue[d] that to satisfy the possession element of the test, a person or entity must be in exclusive possession of the property …."  *Pierson*, 48 P.3d at 1219.  The court rejected this argument because

11

it was not applicable to the defendant operator because defendant was not the owner of the property where the incident occurred. *Id*. The court also held that exclusive possession is not a requirement to establish that a defendant is a "landowner" under the "in possession of" definition. *Id*. Consequently, CASI's lack of exclusive possession of the area of plaintiff's fall is not dispositive of whether CASI was "in possession of" the spot of plaintiff's fall. *Id*.

*Nordin* again demonstrates that CASI was a "landlord" under the "in possession of" definition. In *Nordin*, the plaintiffs were an elderly couple who rented a house from the defendant landlord. *Nordin*, 148 P.3d at 219. The wife was injured and the husband died from carbon monoxide poisoning that emanated from either a furnace, or hot water heater. *Id*. Plaintiffs sued the landlord, asserting a premises liability claim. *Id*. The landlord moved for summary judgment, arguing that he was not a "landowner." *Id*. The court's analysis examined the landlord's contractual responsibilities in the lease. *Id*. at 220-21. The lease required the plaintiffs to notify the landlord of any necessary repairs, and required the landlord to make such repairs. *Id*. at 221. Consequently, the court held "the provisions of the lease support the conclusion that [the landlord] was a 'person in possession of' the premises[.]" *Id*. The same rationale applies here. Like the landlord in *Nordin*, CASI was contractually responsible for addressing the condition that caused the respective plaintiffs' injuries. *Id*. at 220-221. Like the landlord in *Nordin*, CASI was contractually responsible for correcting conditions on the premises after receiving notice of the need to address such conditions. *Id*. at 220-221. Thus, *Nordin* demonstrates that CASI is a "landowner" under the "in possession of" definition.

CASI cites *Jordan* for the proposition that CASI was not "in possession of" the location of plaintiff's fall because it lacked sufficient control at the time of plaintiff's fall. E.C.F. 76 at pp. 10-11. *Jordan* does not support this argument. The plaintiff in *Jordan* was injured "when she tripped and fell over an unevenness in the sidewalk outside [an orthopedic] clinic…" *Id*. at 1037. Plaintiff sued the clinic, asserting a premises liability claim. *Id*. The analysis of whether the clinic

12

was "in possession of" the sidewalk focused on whether the clinic had exclusive use of the sidewalk, and whether the clinic's lease required it to maintain the sidewalk. *Id*. at 1042-43. Because the clinic's lease did not give it exclusive use of the sidewalk, and because the clinic was not contractually obligated to repair the sidewalk, the court held that the clinic did not qualify as a "landowner" under the "in possession of" standard. *Id*. at 1042-43. The same rationale does not apply here because CASI was contractually obligated to remove and prevent the accumulation of snow and ice from the spot where plaintiff fell. *Jordan* also demonstrates that CASI was "in possession of" the spot where plaintiff fell.

### 2. The "legally responsible" analyses in *Land-Wells* and *Nordin* are inapplicable here because of key factual distinctions.

CASI cites to *Land-Wells v. Rain Way Sprinkler & Landscape*, 187 P.3d 1152 (Colo. App. 2008) and *Nordin* in support of the argument that it was not a "legally responsible" landowner because it was not at DIA when plaintiff fell. E.C.F. at 12-14. These cases are factually distinct.

In *Land-Wells*, plaintiff slipped and fell on icy sidewalk. *Id*. at 1153. The defendant landscaping company installed a drainage system that caused the ice. *Id*. The court held that the defendant was not "legally responsible" for the ice because "at the time of the incident, defendant was not … conducting any activity related to, or creating the condition of, the icy sidewalk." *Id*. at 1153-54. It is unclear how much time had passed between the date that the landscaping company installed the drainage system, and the date plaintiff was injured. *See generally, id.* The key factual difference between *Land-Wells* and here is that the landscape company performed a discrete, finite act at the premises (installing a drainage system), while CASI had an ongoing contractual obligation to remove and prevent the accumulation of snow and ice on the date of the incident, and CASI performed these services before and after plaintiff's fall. The rationale in *Land-Wells* that affixes a finite end-point to the defendant's activities on the premises is absent here.

*Nordin* does not demonstrate that CASI was not "legally responsible" for the ice that

13

caused plaintiff's fall. *Nordin* involved a premises liability claim brought by two residential tenants against their landlord for poisoning from carbon monoxide that emanated from a furnace or water heater. *Nordin*, 148 P.3d at 219. There was no indication that the landlord caused the carbon monoxide to be present in the home. *See generally, id.* The lease required the landlord to make repairs when he had notice of the need for repairs. *Id*. The court held that the landlord was not "legally responsible" for the carbon monoxide because "there is no evidence that [the landlord] was ever made aware of the problem with the hot water heater or the furnace." *Id*. at 222. This rationale is inapplicable here. Unlike *Nordin*, the evidence here reflects that CASI created or failed to remedy the condition that caused plaintiff's injury. *See generally, id.* Second, the landlord in *Nordin* was not responsible for repairing the furnace and water heater that caused the carbon monoxide because it was not notified of the need for repairs, and did not attempt any such repairs. *Id*. at 220-21. Conversely, CASI was contractually obligated to remove and prevent the ice plaintiff slipped on, and CASI attempted to perform these obligations before and after plaintiff fell. *Id*. at 220-221. CASI's contractual responsibilities for the injury causing condition demonstrates that the "legally responsible" rationale in *Nordin* is inapplicable.

CASI's argument is also premised on factual fallacies. CASI repeatedly states that it was not allowed to perform its snow and ice operations within fifty feet of an aircraft, apparently in an attempt to suggest that it could not clear and prevent snow and ice from the spot where plaintiff fell. E.C.F. 76 at 5, 8, 11, 13, 16-17, 19. This suggestion is false, as CASI's Snow Removal Manager testified that CASI attempted to perform its snow and ice removal operations at the spot where plaintiff fell, prior to his fall. CASI also suggests that it cleared all snow and ice from the spot where plaintiff fell. *Id*. at 15, 17, 19. This is also false. As detailed above, there was no snow or precipitation at DIA between the time CASI ceased its operations the afternoon of January 22, and when plaintiff fell. The only plausible interpretation of the facts is that Plaintiff slipped on ice that was either not cleared or prevented by CASI, or that formed when snow or ice that CASI did

14

not clear, melted and re-froze.

> **C. Summary Judgment Should Be Denied on Plaintiff's Premises Liability Claim Because There Is A Question of Fact Regarding Whether CASI Properly Fulfilled Its Contractual Obligations.**

If CASI is a "landowner," CASI will be liable on plaintiff's premises liability claim if CASI's failure to exercise reasonable care to protect against dangers of which CASI actually knew or should have known" caused plaintiff's injuries. C.R.S. § 13-21-115(2),(3)(c)(I). CASI argues that it is entitled to summary judgment on plaintiff's premises liability claim because "[t]here is no evidence that CASI failed to perform its contractual duties to United or failed to exercise reasonable care in the performance of such duties…." E.C.F. 76 at 14. CASI cites to *Henderson* for support. In *Henderson*, the court examined the janitorial company's contractual responsibilities to determine whether the company breached their duty of care. *Henderson*, 70 P.3d at 616. Because the janitorial company's duties only required it to respond to reports of spills, and there was no evidence that the janitor failed to timely respond to the spill, summary judgment was appropriate. *Id*.

Here, CASI was contractually obligated to "remove ***and prevent*** the accumulation of snow and ice" from the area where plaintiff fell on ice. CASI attempted to perform these removal and prevention operations before plaintiff fell, and CASI should have applied de-icer to the spot where plaintiff fell. No snow or ice fell between the time CASI finished its operations in the afternoon, and when plaintiff fell. As detailed here and above, the facts demonstrate that plaintiff slipped on ice that was either not cleared or prevented by CASI, or that formed when snow or ice that CASI did not clear or treat with de-icer, melted and re-froze.

Summary judgment, therefore, should be denied.

> **II. SUMMARY JUDGMENT SHOULD BE DENIED ON THE NEGLIGENCE CAUSE OF ACTION BECAUSE CASI BREACHED ITS DUTY OF CARE BY FAILING TO PREVENT THE ICE THAT CAUSED PLAINTIFF'S FALL.**

To establish negligence, a plaintiff must show defendant owed a duty of care, breach of the

duty, injury, and causation. *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 929 (Colo. 1997). Whether a defendant owes a duty of care is a question of law. *Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980). A "defendant's ownership, possession, and control of the injury-causing circumstances or instrumentality are relevant to determining whether a duty was owed." *Woods v. Delgar*, 226 P.3d 1178, 1180 (Colo. Ct. App. 2009). Where a defendant has a contract related to a dangerous condition, courts examine the contract to determine the defendant's duty. *Criss v. United Airlines, Inc.*, Case No. 20-cv-1670-WJM-NRN, 2022 WL 672484, *4-5 (D. Colo. Mar. 7 2022). A contractor's duty continues for a reasonable amount of time after the contractor has completed its operations. *Collard v. Vista Paving Corp.*, 292 P.3d 1232, 1244 (Colo. Ct. App. 2012).

*Woods* demonstrates that the duty analysis focuses on the defendant's control over the injury causing mechanism. In *Woods*, a pedestrian slipped and fell "on a patch of ice on a public sidewalk adjacent to a restaurant." *Woods*, 226 P.3d at 1179. Plaintiff sued the restaurant. *Id*. The evidence reflected that "the ice formed after water dripped from an awning and froze on the sidewalk." *Id*. The court held: "Absent evidence that [the restaurant] controlled, constructed, or maintained the awning from which the water allegedly dripped, there can be no duty." *Id*.

*Criss* demonstrates that the duty analysis focuses on contracts related to the injury causing condition. In *Criss*, this district court considered a summary judgment motion that in part considered whether United Airlines could be liable on a negligence claim for a passenger's slip and fall on wet carpet inside a jetbridge. *Criss*, 2022 WL 672484 at *4-5. United leased the jetbridge from DIA, and the lease provided that DIA, not United, was responsible for maintaining the jetbridge. *Id*. at *5. To determine whether United owed a duty to the plaintiff, the court examined United's contractual obligations. *Id*. The court held that no duty was owed because: "the Lease provides that [DIA] is responsible for maintenance of the jetway bridge, there is no evidence showing that United created the dangerous condition that caused [plaintiff's] injury, and

16

at the time of the accident the jetway bridge was being used by SkyWest, not United." *Id*. at \*5.

*Collard* establishes that a contractor's duty continues for a reasonable amount of time after the contractor has completed its operations. There, plaintiff was injured after the defendant contractor constructed two road medians, and removed its traffic control devices when the project was completed and accepted by the City of Grand Junction ("City"). *Collard*, 292 P.3d at 1236. At least five days thereafter, the City did not repaint the traffic lines leading to the median, and did not install any traffic control devices. *Id*. Consequently, the center traffic line continued straight into the medians. *Id*. Plaintiff suffered injuries when she followed the traffic lines and drove into a median. *Id*. Plaintiff sued the contractor, asserting premises liability and negligence claims. *Id*. The contractor moved for summary judgment, arguing that it did not owe a duty to plaintiff because it completed its operations days before plaintiff's injury, and relinquished control of the medians back to the City. *Id*. The court rejected this argument because "Colorado case law clearly establishes that contractors owe a duty of care to third parties who could foreseeably be injured by negligent construction, installation, repair, or performance on service contracts, even after the contractors' work has been completed and accepted by their employers." *Id*. at 1244. The court, therefore, denied summary judgment on plaintiff's negligence claim. *Id*. at 1246.

CASI owed a duty of care to plaintiff. Plaintiff fell on ice at a spot where CASI was required to "remove ***and prevent*** the accumulation of snow and ice." As detailed above, CASI should have applied de-icer to spot where plaintiff fell on ice. Like the contractor in *Collard*, and unlike the restaurant operator in *Woods*, and United in *Criss*, CASI had a contractual obligation to remove and prevent the ice that injured plaintiff. *Woods*, 226 P.3d at 1182; *Criss*, 2022 WL672484, at \*5; *Collard*, 292 P.3d at 1244. Consequently, CASI owed a duty to plaintiff, and summary judgment should be denied.

CASI also breached the duty that it owed to plaintiff. As detailed above, the only rational interpretation of the facts is that plaintiff slipped on ice that was either not cleared by CASI, or

that formed when snow or ice that CASI did not clear or treat with de-icer, melted and re-froze.

Therefore, CASI's motion must be denied.

## CONCLUSION

Simplicity respectfully requests that CASI's summary judgment motion be denied.


Dated at Los Angeles, California, this 16th day of June 2022.

Andrew C. Johnson
Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: 310-557-2030
Facsimile:  310-557-1299
Email: ajohnson@condonlaw.com
*Attorneys for Defendant*
*Simplicity Ground Services LLC*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

18

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of June 2022, I electronically filed the foregoing **DEFENDANT SIMPLICITY GROUND SERVICES, LLC'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANT COLORADO ASPHALT SERVICES, LLC D/B/A COLORADO ASPHALT SERVICES, INC., AND D/B/A CASI** with the Clerk of the Court using the CM/ECF system.


Chad P. Hemmat, Esq.                          *Attorneys for Plaintiff Sean Couture*
Cameron O. Hunter, Esq.
Jason Glenn Alleman, Esq.
Anderson Hemmat, LLC
5613 DTC Parkway, Suite 150
Greenwood Village, Colorado 80111
Telephone: (303) 782-9999
Facsimile:  (303) 782-9996
Email: chad@andersonhemmat.com
Email: cameron@andersonhemmat.com
Email: jason@andersonhemmat.com
Email: gaby@andersonhemmat.com
Email: beth@andersonhemmat.com


Maddin McBride Nelson, Esq.                   *Attorneys for Defendant*
Max K. Jones, Jr., Esq.                       *Colorado Asphalt Services, LLC*
Montgomery Amatuzio Chase Bell Jones
4100 E. Mississippi Avenue
Mountain Towers, Suite 1600
Denver, CO 80246-3048
Telephone: (303) 592-6600
Facsimile:  (303) 592-6666
Email: mnelson@mac-legal.com
Email: mjones@mac-legal.com
Email: mwolfe@mac-legal.com
Email: jlimon@mac-legal.com

Kathleen J. Johnson, Esq.                    *Attorneys for Defendant United Airlines, Inc.*
Rachelle J. Veikune, Esq.
Treece Alfrey Musat P.C.
633 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 292-2700
Facsimile: (303) 295-0414
Email: kjohnson@tamlegal.com
Email: rveikune@tamlegal.com
Email: rmusser@tamlegal.com


                                    */s/ Cherlyn Hunt*
                                    Cherlyn Hunt
                                    Condon & Forsyth LLP
                                    1901 Avenue of the Stars, Suite 1050
                                    Los Angeles, California 90067
                                    Telephone: 310-557-2030
                                    Facsimile:  310-557-1299
                                    Email: chunt@condonlaw.com
                                    *[Original signatures on file at the offices of
                                    Condon & Forsyth LLP]*