# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

SEAN COUTURE,

                    Plaintiff,

vs.                                    Civil Action No.
                                       1:20-CV-03181

UNITED AIRLINES, INC.; SIMPLICITY GROUND SERVICES, LLC,
d/b/a MENZIES AVIATION; COLORADO ASPHALT SERVICES, LLC
d/b/a COLORADO ASPHALT SERVICES, INC.; and COLORADO
ASPHALT SERVICES, LLC, d/b/a CASI,

                    Defendants.

------------------------------------------------------------

              VIDEOTAPED AND VIDEO-CONFERENCED
                   DEPOSITION OF MIKE COZZA

------------------------------------------------------------

              PURSUANT TO NOTICE AND AGREEMENT,

the video-conferenced deposition of MIKE COZZA was

taken via video-conferencing per stipulation of all

parties, on August 31, 2021, at 10:00 a.m., before

Jacqueline Hagen, Registered Professional Reporter.

    Job No. 790253

MIKE COZZA - 08/31/2021

Page 2

A P P E A R A N C E S

(All appearances via video-conference.)

FOR THE PLAINTIFF:      CHAD HEMMAT, ESQ.
                        ANDERSON HEMMAT, LLC
                        5613 DTC Parkway
                        Suite 150
                        Greenwood Village, CO 80111
                        (303) 782-9999


FOR THE DEFENDANTS:     MAX K. JONES, Esq.
Colorado Asphalt        MONTGOMERY AMATUZIO CHASE
Services, LLC           BELL JONES LLP - Denver
                        4100 E. Mississippi Avenue
                        Suite 1600
                        Denver, CO  80246-3048
                        Phone No: (303) 592-6636
                        mjones@mac-legal.com


FOR THE DEFENDANTS:     ANDREW JOHNSON, Esq.
Simplicity Ground       CONDON & FORSYTH LLP
Services, LLC           1901 Avenue of the Stars
                        Suite 850
                        Los Angeles, CA 90067
                        Phone No: (310) 407-2385
                        ajohnson@condonlaw.com


FOR THE DEFENDANTS:     KATHLEEN J. JOHNSON, Esq.
United Airlines, Inc.   TREECE ALFREY MUSAT P.C.
                        633 17th Street
                        Suite 2200
                        Denver, CO 80202
                        Phone No: (303) 292-2700


Notary Public:          SAMANTHA PINO
                        Hansen & Company, Inc.


Also Present:           THOMAS DEAN
                        Network Administrator
                        Anderson Hemmat, LLC

MIKE COZZA - 08/31/2021

Page 3

I N D E X

EXAMINATION OF MIKE COZZA:                                      PAGE
August 31, 2021

By Mr. Hemmat                                                      4

By Mr. Jones                                                      43

By Mr. Hemmat                                                     45


DEPOSITION EXHIBITS                                           ENTERED

Exhibit 1                                                          6

Exhibit 4                                                         20

Exhibit 5                                                         21

Exhibit 8                                                         21

Exhibit 9                                                         22

Exhibit 6                                                         25

Exhibit 14                                                        38


          (Exhibit 14 was retained by counsel.)

MIKE COZZA - 08/31/2021

Page 4

P R O C E E D I N G S

*    *    *    *    *    *

(The proceedings commenced at 10 a.m.)

MS. PINO:  Can I get a stipulation from all counsel that we can swear in the witness over video-conference?

MR. HEMMAT:  Yes for plaintiff.

MS. JOHNSON:  Yes for United.

MR. JONES:  Yes on behalf of -- yes on behalf of Colorado Asphalt Services.

MR. JOHNSON:  Yes for Menzies.

MS. PINO:  Thank you.  We're on the record. Today's date is August 31st, 2021.  The time is 10:00 a.m.  This is the Zoom recording of Michael Cozza.  The technician is Samantha Pino, and the court reporter is Jacqueline Hagen.  Mr. Cozza, can I get you to raise your right hand, please?

M I C H A E L   C O Z Z A, having been duly called and sworn, testified as follows:

EXAMINATION

BY MR. HEMMAT:

     Q.   Good morning.  I'm Chad Hemmat.  I'm counsel for the plaintiff.  Can I get your -- can you give me your name again?

     A.   Michael Cozza.

MIKE COZZA - 08/31/2021

Page 11

Q.   Is -- is the only the time that you do operations on Concourse B for snow, or ice -- let's talk about ice melt application.  Would that be only at the specific request and authorization of United?  Or are there other means --

A.   Correct.

Q.   Or are there other means -- other -- or are there other occasions where in your routine maintenance, you would be doing application of ice melt, anyway?

MS. JOHNSON:  Object to the form.

Q.   You can answer.

A.   We do our snow operations under the direction of United Airlines.

Q.   When you're doing work on Concourse A, it would be under the direction of who?

A.   United Airlines.

Q.   When you do operations on Concourse C, it would be at the direction of whom?

A.   United Airlines.

Q.   Who -- are you aware as of January 22, 2019, who would be responsible for snow removal or snow operations or ice melt application at Concourses A and C, the ones -- the portions that you're not responsible for?

MIKE COZZA - 08/31/2021

Page 13

A.  I know who C is.  I do not know who A.

Q.  Perfect.  Who is C?

A.  That would be CAM Services.

Q.  CAM?

A.  Correct.

Q.  Do you know who -- the name of your equivalent snow operations manager would be at CAM in -- CAM around --

A.  No, I do not.

Q.  Let me finish the question.  Around January 22, 2019?

A.  No, I do not.

Q.  And you do not know who be responsible for snow operations for Concourse A during that January 22, 2019, time period?

A.  No, I do not.

Q.  Who determines for the area -- and, again, I'm still talking about January 22, 2019, time period -- who determines when ice melt needs to be applied to the ramp?  Is it you?

MR. JOHNSON:  Form.

MS. JOHNSON:  Foundation.

MR. JONES:  Object to the form.  You can answer.

A.  Ice melt is applied when temperatures are

MIKE COZZA - 08/31/2021

Page 14

below freezing and snow has been cleared from an area.

Q.    Who determines -- well, let me ask it this way.

Can the ramp become slippery without -- without the need for temperature be at or below freezing?

MR. JONES:  Object to the form.

MR. JOHNSON:  Joined.

A.    Below freezing is when ice forms.  That's when it becomes slippery.

Q.    Do you know when -- the ramp that Mr. Couture, Pilot Couture, fell on on January 22, 2019, do you know what that ramp became freezing?

A.    I do not.

Q.    When you were called at 8:00 p.m. to return, what was the purpose of your return?  Were you applying ice melt or snow removal on --

A.    We were directed to -- sorry.  We were directed to apply ice melt on Concourse B.

Q.    All of Concourse B?  Or any -- any place in particular?

A.    Just Concourse B, nothing in particular.

Q.    And would you be able to give me some idea as to who at United would have been the person who contacted you?

MIKE COZZA - 08/31/2021

Page 26

office to a lawyer, but then it says --

A.    That is not --

Q.    Please.

A.    Go ahead.  I'm sorry.

Q.    What -- what --

A.    What --

Q.    -- what information does this tell you as you look at it in your -- in your capacity as manager of snow removal operations?

A.    This is the e-mail request form that comes to you after we are notified that service is needed so that's there documentation of us needing to be out in a certain area to perform our duties at a certain time.

Q.    Okay.  This would have been a -- I guess I'm -- okay.  I think I get it.  So when you told us that you returned -- I mean, this is another document that seems to verify, does it not, that you folks were contacted and asked to return to address the ice melt, the need for ice melt, at 8:00 p.m. on January 22nd, 2019?

A.    Correct.

Q.    Okay.  There's some -- there's some people that I want to talk to you about on the second page there below the -- on our screen, the second page.  So it would be from the 0302 page.

MIKE COZZA - 08/31/2021

Page 32

called back at 8:00 p.m. on January 22 to -- to work Concourse B, correct?

A.    Correct.

Q.    So you -- but you still believe some of your hours of this 14 that signify for you, for example, in the category January 22 might have actually been hours logged on January 21?

A.    Incorrect.

Q.    Okay.  So you would agree that all of the 14 hours that you identify on January 22 for you would have at least started on January 22?

A.    Correct.

Q.    And then moved into -- would have -- would have presumably, in your case, would have gone -- if I'm not -- if math hasn't escaped me, there would have only been about four hours left of January 22 and then another ten hours maybe on January 23; would that be correct?

A.    Say that again, please.

Q.    I'm trying to understand how we had -- if we know you started up work at 8:00 p.m. on January 22nd, if that would have been your first work and there's only four hours left of January 22, then presumably some of -- go ahead.

A.    14 hours signifies from midnight until two --

MIKE COZZA - 08/31/2021

Page 33

or I'm sorry -- 1400 when we were released.  So we arrived at DIA for work on the 21st and worked through until the 22nd.  So the 8 was the 14, the combined hours we were there on the 21st and 22nd, split in each day.

Q.    Okay.  But there was no -- there would have been no work from your company, you're saying, and nobody logging any hours after 4:00 p.m. on January 21 until you were called back at 8:00 p.m. on January 22?

A.    Correct.

Q.    All of --

MR. JONES:  I --

MR. HEMMAT:  I'm sorry.  Go ahead.

MR. JONES:  I was going to say I think the questions and answers are just kind of missing each other, but what Mike just said, if I could help for a little bit just to explain it --

MR. HEMMAT:  Let me -- let me ask a few more questions and if it still --

MR. JONES:  Okay.  Go ahead.

BY MR. HEMMAT:

Q.    If I'm -- if I'm -- it appears to me Mr. Cozza if I -- if I read this correctly and if I understand correctly what you're saying, all of the hours that are identified under January 22, the 14

MIKE COZZA - 08/31/2021

Page 34

under this box, 22 January, would have had to have started -- if I'm not mistaken from what you told me earlier, would have had to have started at 8:00 p.m. on January 22, correct?

A.   Incorrect.   Incorrect.   They would have started at midnight, from midnight until 2:00 p.m. on January 22nd, which is 0 to 1400 hours.

Q.   Can we go back to Exhibit 1 for a moment?   We looked at this earlier.   It's -- it was your e-mail as to Colorado Asphalt, Bates No. 1.   We had reviewed this earlier.

I thought you had told us that all of the work that this e-mail references is that you -- that all of the work that your company did involving snow removal or application of ice melt, whatever, on January 21 ended at 1400 hours or 2:00 p.m. on January 21?   Is that still accurate?   I'm sorry.

A.   Looks like I had a typo when I typed that e-mail, and it should have been 1-22-19 that we were released at 1400.

Q.   Okay.   So you're saying that you guys were -- you guys were working all the way up to January -- to 2:00 p.m. on January 22, the date this pilot fell --

A.   Correct.

Q.   Then there was a -- from 2 o'clock in the

MIKE COZZA - 08/31/2021

Page 44

Q.   Okay.  Down here at the end, it says "pulling up contact mids."  I just kind of highlighted that. What is -- what is that in reference to?

A.   It looks like someone typed in the incorrect box when we were released.

Q.   Okay.  Well, what time does it say you were released?

A.   1300 on 1-22-19.

Q.   Okay.  So the -- I think you testified you all left at 1400?

A.   Correct.

Q.   Is it possible that United can release you and then it takes longer to leave?

A.   Incorrect.  That's when we were released from the hangar; it looks like.

Q.   Okay.  And what does that mean when you say you were "released from the hangar"?

A.   That's a different area of the airport that we do snow removal.

Q.   Okay.  This has a contact of Neil Smith. Who's he with?

A.   He's the contact for the hangar.

Q.   From United?

A.   Correct.

Q.   Okay.  Based on the information you've been

Page 45

shown today, was CASI -- did CASI leave DIA at 2 o'clock in the afternoon on January 22nd, 2019?

A.    Correct.

Q.    And did they return at 8:00 p.m. on January 22nd, 2019?

A.    Correct.

Q.    Was anyone at -- from CASI at DIA during that six-hour interval?

A.    No.

MR. JONES:  That's all I have.  Thank you very much.

MR. HEMMAT:  I have follow up.

CONTINUED EXAMINATION

BY MR. HEMMAT:

Q.    Should I read this document -- this Colorado Asphalt page 5 that counsel referred to, should I read that as Neil Smith would have been the person from United who would have released you according to this document at 1300 hours?

A.    Correct, he -- he was the person that released the crew that was the at hangar.

Q.    I want to make sure I'm clear.  I -- well, what's the difference between Concourse B and -- you're referencing "the hangar."  What is the difference?

A.    There's two -- two locations where we perform

MIKE COZZA - 08/31/2021

Page 46

snow operations.  One is the concourse, which is B
Concourse and parts of A and one gate on C, and then
there's the hangar where we also do snow removal, and
they have separate people that contact us for that.

Q.   Okay.  So what this -- what a -- what I
should understand the document that counsel just showed
-- you said a couple of times "the hangar."  A hangar
is where -- an inside location like a garage for
airplanes; is that correct?

A.   Yes.

Q.   Okay.  And so when you're doing snow removal
at the hangar, that would be equivalent to pretty much
getting to the -- making sure that the -- when the
planes exit the garage, they -- they have an -- and
people that are around that exit of the garage, the
snow is removed and the -- and it's not slippery at the
hangar, correct?

A.   Correct.

Q.   Okay.  So we should read this document as
being what time you folks were released, which may have
been 1 o'clock on January 22, 2019, from the hangar?

A.   Correct.

Q.   But if I'm correct, that what you told
counsel is while it's true that you were released from
Neil Smith at the hangar for your -- for your services

MIKE COZZA - 08/31/2021

Page 47

associated with the hangar at 1 o'clock, you continued to do snow removal, ice melt application, et cetera, until 2 o'clock in the afternoon on January 22nd as it relates to Concourse B?

A.    Correct.

Q.    Concourse B is where concourse -- where Gate 53 was where my client fell down and apparently about 6:30 and 6:35?

A.    Correct.

MR. HEMMAT:  That's -- I think those are my questions.  Thank you very much.

THE COURT REPORTER:  Counsel, is this witness signing?

MS. PINO:  Hold on.  Hold on.  Is anyone else questioning?

MR. JOHNSON:  No.

MS. PINO:  Go ahead, Jackie.

THE COURT REPORTER:  Okay.  Is this witness signing, reading and signing?

MR. JONES:  Yeah, we'll read and sign, and you can have it directed.

MS. PINO:  Okay.  We're going to go off the record.  The time is 11:12 a.m.

MR. HEMMAT:  We'd like to order.  Plaintiffs would like to order.  An E-tran would be fine.

MIKE COZZA - 08/31/2021

Page 51

REPORTER CERTIFICATE

I, JACQUELINE N. HAGEN, Registered Professional

Reporter, certify:

That the foregoing proceedings were taken before me at

the time and place herein set forth, at which time the

witness was put under oath for me;

That the testimony of the witness and all objections

made at the time of the examination were recorded

stenographically by me and were thereafter transcribed;

That the foregoing is a true and correct transcript of

my shorthand notes so taken;

I further certify that I am not a relative or employee

of any attorney or of any of the parties not

financially interested in this action.

_____

JACQUELINE N. HAGEN, RPR

Dated:  September 14, 2021